IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Deloris Blakely, as Personal Representative of Lori Jean Ellis | ) ) ) | C/A No.: 3:10-cv-707-JFA |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| Kershaw County Sheriff's Office; Steven D. McCaskill in his capacity as Sheriff of Kershaw County; Tyrell Coleman; William Sowell; South Carolina Department of Natural Resources; John E. Frampton, in his capacity as the Director of Natural Resources; and Gregg Lowery, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter comes before the court upon the defendants' motions for summary judgment (ECF Nos. 77 & 78). The parties have fully briefed the matter and the court heard oral argument. Following oral argument, the court denied the motions. The court issues this written order to supplement that ruling. As set forth below, the court denies the defendants' motions for summary judgment with the exception of the grounds consented to by the plaintiff.

## I.   FACTUAL AND PROCEDURAL HISTORY

This case arises from a fatal shooting incident involving two Kershaw County Sheriff's deputies and a South Carolina Department of Natural Resources (SCDNR) agent. On April 21, 2008, Deputy William Sowell and Agent Gregg Lowery went to Lori

Jean Ellis's residence, a mobile home located at 1216 Dogwood Lane in Kershaw County. The officers were attempting to serve outstanding warrants stemming from four misdemeanors, and planned to take Ms. Ellis into custody to serve jail time. Lowery and Sowell arrived shortly after 10:00 p.m. Though the officers allege they saw Ms. Ellis open the door and yell at the dog, she refused to come out of the residence. Due to the presence of a pit bull within the residence's fence and Ms. Ellis's refusal to leave the residence, Sowell contacted his supervisor, Kershaw County Corporal Tyrrell Coleman, who also came to the residence. Believing that Ellis was fleeing arrest, Coleman, Sowell, and Lowery (the officers) formulated a plan to enter the house without endangering themselves due to the dog.

The officers entered the yard in Lowery's DNR truck, with the two officers in the bed of the truck. Sowell used his pepper spray on the dog and it retreated under an out building. Once near the door, the officers attempted to open the door by picking the lock. The officers allege they continued to announce themselves and their purpose throughout this procedure. The officers eventually opened the door, and when the door opened, the officers allege that Ms. Ellis was moving toward the door and raising a long gun. The officers also allege they heard a pop or saw a poof or flash. Upon seeing Ellis, Lowery moved to his left to gain cover, and fired two shots while making that movement. Coleman moved toward the truck—which was behind him—and fired a single shot. Lowery fired first. Sowell did not fire due to the position of the other officers, and he jumped from the back of the truck to gain cover. The officers then called for back-up.

2

When SLED arrived, they entered the house, and discovered Ms. Ellis deceased, lying in her bathroom with her feet in the hallway.  The autopsy and ballistic evidence indicates that Ms. Ellis died from the third shot—fired by Coleman—which struck her in the back of the head.  Lowery's first shot missed Ellis, but his second shot grazed her shoulder.  Ms. Ellis's blood alcohol content was between 0.269-0.282%.  The police found a pellet gun upon entering the house.

The parties have submitted various photos and reconstructions which indicate the path of the bullets as they travelled through the mobile home.  The parties dispute whether or not the forensic evidence supports the officers' version of the events outlined above.  Defendants now ask this court to grant summary judgment in their favor on all the claims asserted by Plaintiff.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted), and

summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Maryland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.    DISCUSSION

### a.    *Excessive Use of Force*

Plaintiff claims that the officers used excessive force against her that violated the Fourth Amendment's protection against "unreasonable seizures." *Graham v. Connor,* 490 U.S. 386, 394 (1989). Any claim that law enforcement used excessive force during an arrest or other seizure is examined under the Fourth Amendment's "objective reasonableness" standard. *Id.* at 388. In order to establish a claim for excessive force, a plaintiff must show: "(1) a significant injury; (2) that resulted from the use of clearly excessive force; and (3) that the force used was objectively reasonable." *Id.* at 390. The plaintiff has the burden of showing that the use of deadly force was unreasonable. *Tennessee v. Garner*, 471 U.S. 1, 12 (1985).

In making this inquiry the court must look to "the facts from the perspective of a reasonable officer on the scene,' and avoid judging the officer's conduct with the '20/20 vision of hindsight,' recognizing that 'police officers are often forced to make split-

second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (*quoting Graham*, 490 U.S. at 396–97). The central inquiry is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id.* (*citing Graham*, 490 U.S. at 396–97). While "[t]he intrusiveness of a seizure by means of deadly force is unmatched," deadly force may be used "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Carr v. Deeds*, 453 F.3d 593, 600 (4th Cir. 2006) (*quoting Garner*, 471 U.S. at 9).

In fatal excessive force cases such as the instant case, the court is often confronted with only the officers' testimony and the forensic evidence. In such circumstances, "a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial." *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (*citing Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir. 1994)). When there is contrary evidence, a "court may not simply accept what may be a self-serving account by the police officer." *Id.* (*citing Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

Viewing the facts, evidence and inferences in the light most favorable to the plaintiff as it must, the court is constrained to find at this stage in the case that there are genuine issues of material fact that prevent the court from granting judgment as a matter of law. The court finds that on the record before it a properly charged jury could

reasonably reject the officers' testimony.  Accordingly, summary judgment on the § 1983 excessive force claims against Agent Gregg Lowery and Deputy Tyrell Coleman should be denied.

The plaintiff indicated at oral argument that it did not contest dismissal of the § 1983 claims against the other defendants.  Accordingly, judgment as a matter of law is hereby granted in favor of William Sowell, Stephen McCaskill in his capacity as Sheriff of Kershaw County, the Kershaw County Sheriff's Office, John E. Frampton in his capacity as director of SCDNR, and SCDNR on the § 1983 excessive force claims.

### i.  Qualified Immunity

Qualified immunity serves to "provide[] ample protection to all [public officials] but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  In *Harlow v. Fitzgerald*, the Supreme Court of the United States set forth objective standards for a qualified immunity defense, holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. 800, 818 (1982).  The Fourth Circuit Court of Appeals has held that an official's entitlement to qualified immunity is based on an "objective reasonableness" standard, explaining that "the very idea of reasonableness requires that courts accord interpretive latitude to official judgments."  *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).  In assessing whether an official is entitled to qualified immunity, courts go

through a two-pronged analysis—under the first prong, courts determine "whether a constitutional right would have been violated on the facts alleged," and under the second prong, courts decide whether that constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).[1]

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that law." *Katz*, 533 U.S. at 202. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The court finds that the disputed issues of material fact similarly prevent the court from granting judgment as a matter of law on the qualified immunity grounds as to defendants Coleman and Lowery. *See Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 275 (4th Cir. 2011). The disputed factual issues prevent this court from making a determination of whether the officers violated Ellis's Fourth Amendment rights and, if so, whether they should have known their conduct was impermissible.

b. *State Law Claim*

The complaint in this case also includes a state law claim for negligence. Under SC law, the proper defendants for state law claims of negligence would be the SCDNR and the Kershaw County Sheriff's office. *See* S.C. Code Ann § 15-78-70 (providing

---

[1] Since its decision in *Saucier*, the Supreme Court has held that the two-step procedure need not be followed rigidly, noting that "[b]ecause the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

immunity to individual defendants).  Plaintiff indicated that she did not contest summary judgment against the individual defendants, and accordingly, the court hereby grants judgment as a matter of law in favor of Steven D. McCaskill in his capacity as Sheriff of Kershaw County, Tyrell Coleman, William Sowell, John E. Frampton in his capacity as the Director of Natural Resources, and Gregg Lowery as to the state law negligence claims.  Due to the factual disputes as discussed above, the court denies the motion as to the remaining defendants, and the South Carolina Department of Natural Resources and the Kershaw County Sheriff's office remain in the case as defendants on the negligence claims.

## IV.    CONCLUSION

In summary, the case will proceed to trial with Tyrell Coleman and Gregg Lowery as defendants on the § 1983 excessive force claims and the South Carolina Department of Natural Resources the Kershaw County Sheriff's as defendants on the negligence claim.


IT IS SO ORDERED.

August 13, 2012                                  Joseph F. Anderson, Jr.
Columbia, South Carolina                    United States District Judge

8